Beginning with United States v. Perez-Gallan And I'm going to let you pronounce your last name because I'm sure to mess it up Stephanie Cagnart Alright, say that again Cagnart Cagnart, alright It's Cagnart but that's a bit too cruel to take away all of the consonants May it please the court, Stephanie Cagnart on behalf of the United States The Supreme Court's decision in United States v. Rahimi resolves this case Our nation's history and tradition permits the temporary disarmament of someone who has been found to pose a credible threat to the safety of another And that happened here Mr. Perez was released on bond after a court found probable cause that he had assaulted his domestic partner And a condition on bond was a prohibition against committing more acts of domestic violence and abuse Mr. Perez did not challenge or seek to modify that order So it remained in place when 30 days later he was found with a stolen gun at a border checkpoint This court should reverse the district court's order holding section 922G8C2 facially unconstitutional And should remand for further proceedings for three reasons First, the second amendment challenge is foreclosed by Rahimi Second, section 922G8C2 didn't become unconstitutional as applied because Mr. Perez chose to ignore it and bring his gun with him when he drove from Kentucky to Texas And the allegations made in briefing about his need for a weapon are not supported on this current motion to dismiss record And finally, Mr. Perez has not shown that the district court committed an error in finding that the procedural requirements of G8A were met in this case First, Rahimi forecloses a challenge to C2 In Rahimi, the U.S. Supreme Court affirmed that the history and tradition of our nation's firearm regulations permits the temporary disarmament of a person who poses a credible threat to the physical safety of another The Supreme Court specifically said they weren't deciding C2 That is true, and that is under the principle that because they could resolve the case on C1, it was unnecessary to address C2 It did not pass on the merits or say that C2 actually requires something different And this court in United States v. Emerson held that C2 actually contains the same threat-finding requirements as does C1 And that is because of basic principles of injunction law In order for a court to enter an injunction, in the case of a C2 order, to prohibit the use of physical force sufficient to harm another person It is a legal requirement that the court first determine that a real threat of danger or injury actually exists Counsel, I mean, that's interesting. Can you explain why is there a C1 and a C2 then? That is not clear from the legislative history, but both were added to narrow the reach of the firearm prohibition So when 922G8 was introduced, it did not go to floor debate So there is limited legislative history But when it was initially introduced, the prohibition was simply that a protective order would trigger the firearm restriction And opponents added C1 and C2 in order to narrow it Scholars who have looked at this have said it is probably because of the reality of what protective orders look like That many protective orders don't always contain the predicate findings They merely state what the injunction prohibits But that doesn't mean the finding doesn't exist It sounds like what you're saying is the C1 is an explicit, this person is dangerous, I'm paraphrasing, of course The C2, you're saying it's implicit That is right So to me that says, well, if it's implicit, it may or may not exist in a given case, that finding Yes, I understand that that is a concern, and that is a concern the defendant has raised Now I will say on your characterization of explicit versus implicit Every circuit that has looked at this question has said C2 incorporates an implicit requirement that a threat be found The circuits are uniform on that That includes the 3rd, the 4th, the 6th, the 8th, this court in Emerson and in McInnes Now as far as whether or not Now if that's true, if I agreed with you on that, that would foreclose a facial challenge to C2 It would I wouldn't say anything necessarily about an as-applied challenge So the as-applied challenge, we have asked that the court remand it But if the as-applied challenge is that the court in entering the protective order failed to follow the law That is not actually a challenge to the constitutionality of 922G8 What that is is an attack on the validity of the protective order itself That the court was required to make a finding, failed to do so, and thus this protective order is invalid And as this court made clear in Emerson and in United States v. Banks A G8 federal proceeding is not the forum to raise a collateral attack against an underlying state court order That complaint, if the state court order itself is invalid, must be made through the state court process And in this case, Mr. Perez, release conditions of this kind are governed by Chapter 4 of the Kentucky Rules of Criminal Procedure And under those rules, he could have sought to modify, he could have appealed the order, and he never did so We'll also note that in this case, there is additional reassurances that the statute under which the conditions of release were entered Is Kentucky Revised Statute Section 431.064 So what happens under that statute is when somebody has been arrested and the state court has made a probable cause determination That they committed assault, which is what happened here Then under the statute, the statute states the court must determine whether there is a threat to the alleged victim And then may impose conditions to protect the alleged victim So between the injunction principles and the state law at issue here That finding of a credible threat that Rahimi said suffices existed here Any challenge as to whether or not it was actually made, first, can't be resolved on this record We are just on a motion to dismiss record But second, would likely be a barred collateral challenge And I would point out the only other circuit that has looked at the constitutionality of C2 after Rahimi Was the 6th Circuit in the United States v. Combs And it had no trouble concluding Rahimi tells us C1 is constitutional C2 requires that same finding at Fortiari C2 must too be constitutional We'd be creating a circuit split if we went the other way You would, yes So Combs is unpublished, but it would be in direct contradiction to Combs Second, I'd like to address the defendant's argument that he couldn't be disarmed Because he was in Texas with his weapon Defendant raises a challenge to the nationwide scope of G8 Pointing out that there were not federal firearms prohibitions at the founding Of course, Rahimi confirmed the constitutionality of a federal firearm law And reminded us that the Second Amendment is not a law trapped in amber The fact that a federal firearm prohibition didn't exist in 1791 Does not prevent one from existing now And history and tradition confirms that when a jurisdiction enacted any kind of disarmament or ban It could extend throughout the scope of that jurisdiction So the colonial law that Mr. S. points out in one of his supplemental briefs Extended throughout the colony The English Militia Act, the Statute of Northamptons, the Going Armed Act All of them apply to the entirety of the country This federal prohibition is no different Now, defendant posits that he should not be stopped from having a gun in Texas Because he wasn't in proximity to his partner or child And they were the ones who were really threatened by the protective order Now, saying that a federal, certainly a temporary, firearm prohibition Has to be limited to a person or place Does not have any support in our history or tradition Take, for example, the going armed laws One could violate a going armed law, which would result in permanent disarmament By being armed in the presence of a particular person Say, an officer or a justice Or by being armed in a particular place A fair, a market, anywhere else When that happens, the disarmament was permanent and complete You were not merely disarmed in future interactions with that justice Or in future visits to that fair Moreover, here any legislative determination that it is appropriate to temporarily But completely disarm someone who is awaiting trial on domestic violence Is a supportable legislative judgment As Rahimi itself illustrates And as most cases that have gotten to the circuit on C2 illustrates Those who have committed domestic violence pose a real threat Not just to their partners, but to others There also are no factual findings And could be no factual findings on this record That Mr. Perez, in fact, posed no threat to his partner Assuming that were even the relevant test What we know from the stipulated facts on the motion to dismiss At pages 199 to 200 of the record Is that Mr. Perez had had this weapon for over a year It was a stolen weapon in Kentucky That he claimed had been gifted to him And he had it with him in Kentucky He then brought it down in Texas So he had it in proximity to the protected family members The government is not aware of a case Where a court has looked at this geographic proximity argument But one case that I think is helpful Is the Fourth Circuit's decision in United States v. Maheen In that case, the defendant made a similar argument That he couldn't be prohibited from having a weapon at a shooting range Despite having a protective order against him under C-2 Because when he was at the range He couldn't bring the rented weapon outside of the range So he couldn't get to his wife and kids with it And the Fourth Circuit found first That ignored the fact that at the range He posed a threat to other people He had a gun around others And it also ignored that it was not impossible For him to get that gun to smuggle it from the range And still harm those protected by the order In this case, the distance between Texas and Kentucky Is not insurmountable It is less than a 20-hour drive Mr. Perez has also posited That he can't be barred from having a gun Because the founders would always have allowed him To have a gun for self-defense In the wilderness, near wildlife While transporting valuable cargo There are no factual findings As to the reasonableness or genuineness Of his claims for self-defense That this court can review There are no findings that this was in fact a wilderness Or that he was transporting valuable cargo To the contrary, I'd point out that Mr. Perez was driving an 18-wheeler down a highway And the 18-wheeler was actually empty He could make such a case And I don't know whether he could or not That's something that could be taken up on remand? It could be taken up on remand And we would urge that there are no wilderness Or other exceptions in the history and tradition But yes, that would be taken up on remand In other words, we wouldn't address that If there were such a case That is correct And I don't think it would be possible to address it Because again, these claims That this qualifies as a wilderness And I don't think Marfa and Presidio In 2024 actual towns, highways Would be recognized as a wilderness by the founders But there certainly There would be no basis on which this court Could look at that What do you do with the rule of orderliness issue? That the Rahimi panel's decision on C-2 remains binding? Yes, because the Supreme Court Specifically said it wasn't deciding C-2 And we have our general jurisprudence That says that the rule of orderliness Would apply unless the Supreme Court Has specifically addressed the issue So I think in Enri Bonvillian This court was very clear that Even if the statute in question That was the subject of a prior decision Was not specifically addressed by the Supreme Court If what the Supreme Court said In a different case Means that the analysis On which the prior Fifth Circuit opinion relied Is now unequivocally out of step With what it is supposed to do In analyzing the statute Then that prior decision no longer remains binding So Enri Bonvillian involved the Limitations Act And whether or not a statute of limitations Was jurisdictional The Supreme Court had looked at an entirely different statute And had said We apply a specific rule In deciding whether or not the limitation Is in fact jurisdictional That was different from the rule The Fifth Circuit had previously used So the Fifth Circuit determined Its prior precedent was no longer binding And it needed to start over And I think that that's what happens with Rahimi Because of course Rahimi was applying The history and tradition test That it had been given by Bruin And so its analysis on both C-1 and C-2 Relied on that historical analysis And it was that methodology That the Supreme Court said Was improperly applied I'd also point out if I may Page 459 is where The Court specifically addressed C-2 And it said the historical analogs Were not relevant Because G-8 Can apply to civil protective orders Not just criminal orders And of course Rahimi did not agree with that And Rahimi G-8 was permitted to apply To a civil protective order The second analysis was That it was possible that a lot of orders Under C-2 are issued Using boilerplate language So no finding is found And that's exactly what the Supreme Court said Misapplied the facial standard So I would say generally the history and tradition test Used in Rahimi We were told it was unequivocally Out of step by the Supreme Court But the two specific rationales About civil protective orders And about some of these orders May be boilerplate Are specific errors That the Supreme Court pointed out in Rahimi So it no longer remains binding All right, thank you Ms. Kenyart You've saved time for rebuttal Mr. O'Neill May it please the Court Mr. Perez was arrested And accused of assault Causing minor injury, a Class A misdemeanor In Kentucky Within 24 hours a judge set conditions Of pretrial release Kentucky law authorizes special conditions Of pretrial release in assault cases After a judge has made a finding About whether the defendant Is a threat to the victim And whether he is reasonably likely To appear in court But the Kentucky law Does not set an evidentiary standard By which that finding must be made And it does not condition The imposition of the special conditions On the judge having made that finding In that way Kentucky pretrial release law Differs critically from Kentucky law Governing the issuance of domestic violence Protective orders, the kind of protective orders This Court talked about in Emerson In order to issue a domestic violence Protective order in Kentucky A family-ledged law judge must find By a preponderance of the evidence That domestic violence and abuse Has occurred and may occur Again in the future This difference between the Kentucky Domestic violence protective order law And the Kentucky law governing Pretrial release in assault cases Illustrates the fundamental flaw With the government's argument The government argues that any The government argues in defending The as-applied and facial constitutionality Of section 922 G8C2 That any C2 order Will effectively be a C1 order It will contain implicitly A finding that the defendant Is a credible threat of violence To the person of another And the government relies For that proposition on this Court statement at Emerson That Congress assumed that protective Orders would only issue when the Evidence showed a real threat of injury But Kentucky pretrial release law The law at issue here The law that authorized the order That the government relies on here Shows that states have subsequently gone further And permitted the issuance of orders That meet C2's criteria Without a finding that the Person poses a credible threat But more important Than the idiosyncrasies of Kentucky's laws Is the overarching problem With the government's argument In that the government attempts to defend The constitutionality of 922 G8C2 On something other than its elements On something beyond Its elements. It didn't charge Mr. Perez under C1 If we go to trial in this case Assuming that we lose the constitutionality challenge Mr. Perez, the government Would not be required to prove That a judge found Mr. Perez To be a credible threat of danger To the person of another. Instead The government seeks only to convict him Based on proving that he Possessed a firearm while subject to An order that he had the opportunity to Challenge that restrained him from Harassing his Domestic partner and that prohibited Him from using force Or threatening to use force. That approach where the government doesn't Look to the elements but looks at things Beyond the elements is inconsistent With the approach this court took in Diaz. In Diaz the court considered Of course an as applied challenge To the felon in possession law 922 G1. There The court looked only to the prior Convictions of Mr. Diaz That were punishable by a term of Imprisonment greater than one year. Felonies. The court Denied or declined to follow The government's request to look at Other facts such as his misdemeanor convictions As well as other facts About his history that were not Criminal but that were reflected in his Pre-sentence investigation report. That holding reflects an understanding That the reasons for disarmament Which are what must be supported according To Bruin by historical analogs Must also be reflected in the Law's element. Basically If the government wants to disarm someone And they list the reasons why Of the disarmament in the elements of the statute That they accuse the person of violating Those elements have to be the thing That are analogous to this To this country's historical tradition Of disarming people. And to understand why that So counsel I think I understand your What's wrong with this? In C1 we have An explicit element you're calling it Of a finding of dangerousness And so that's Rahimi Here in C2 We have an order directed to Preventing such violence So There may be an implicit Finding sort of an A priori finding of violence Or there may not be I don't know. So that's an As applied challenge right? That's not a Facial. I know you're arguing for a facial Challenge but what's wrong with saying Well there may or may not be Such a premise in a C2 Prosecution But we'd have to know that To figure out an as applied challenge To the constitutionality. So I'm happy representing Mr. Perez for the court To make that finding The part that gets me kind of hung up On it right is that In the future how do we Mount challenges to C2 right? Is it that We have to ask for a jury Instruction about whether there was a Credible threat finding As part of showing that C2 is constitutional Sort of going beyond the statute It seems to me that the reason why It's a facial challenge Is because in no C2 Prosecution will the government be Required to show that there Was a finding of a credible threat of violence Take me through A situation where there wouldn't be a Finding of a credible threat of violence And yet there would be an order That qualifies as a C2 order Maybe you've already done that under Kentucky law but just to me I look at it and say well There's probably a finding in there somewhere That led to that order Well so I don't think Kentucky law certainly doesn't require a finding And I don't see anything in the record Showing that there was a finding made And the idea of an implicit finding Seems a little confusing Well when I say implicit I mean From the language of the federal statute Implicitly We're saying well there was a finding Otherwise why would there be such an order An injunctive order against somebody So in Kentucky if someone petitions for A domestic violence protective order The judge reviews that petition And sets it for a hearing within 14 days And then at that hearing You can imagine The parties going in and saying Do we want to have a contested hearing And the judge saying Mr. Perez I'm thinking about Issuing an order that prohibits you from Attempting to use Or threatening to use physical force Against your spouse Do you have a problem with that And of course someone in Mr. Perez's shoes is going to say No because all you're directing me to do Is follow the law So agreed orders are the most obvious Area where this becomes an issue Because the judge in that scenario Isn't evaluating evidence Isn't making a credible threat finding The judge is simply saying Well the parties here seem to be agreed That I can order perhaps both of them As Judge Ho pointed out in both of his concurrences In both Rahimi panel decisions Perhaps I can just order both of them To not threaten each other Which is following the law Generally And so do you all agree to that Good okay great I guess my reaction to that is If there were such a case And the defendant Showed that That that's how the order came about That sounds like a pretty good as applied challenge To see to Right And yet there are plenty of cases I can imagine I would say the majority of cases But what do I know Where the reason there is an injunction Of an order Is because there was violence And you want to prevent the violence Right But the issue with a C2 order Is that if we go into a trial Right There will never be that question About whether there was a credible threat of violence finding And so that's my issue That's why I think that C2 has to be Facially unconstitutional Because the government is essentially saying Let us bring C1 prosecutions Let us show to a judge That it's a C1 prosecution And then let us prove to the jury The, I think, easier task Of C2 And I think that poses not only second amendment problems But due process problems as well Right Because they're essentially saying If the congress made an assumption And passed a law that reflects that assumption Then We can disarm people Even if they don't have to approve That assumption in court To a jury beyond a reasonable You couldn't, so look I wasn't a criminal defense attorney so forgive my ignorance But you couldn't file a motion to dismiss The prosecution saying The application of C2 To me is unconstitutional And I'm going to show you why Because there is no predicate Finding of violence And so to apply this to me Is, violates my second amendment rights You certainly I mean that is one way that this You know, this could shake out And that is a way that the court Could craft to do those I would caution against that Why? I mean I think Diaz sort of implicitly rejects that Right, because That's a felon in possession Yes sir, because in Diaz the court Very explicitly only looked to Prior felonies Things about the person's past that would satisfy An element of the statute Right, in a G1 prosecution you have to prove that he Possessed the firearm You know, after having been convicted Of a crime punishable by greater than a year And in Diaz this court said We're only looking at crimes punishable by Greater than a year Well yeah, that's what the statute says though Right, and here the statute says That we're looking at whether That you look at Whether the order prohibited the use Attempted use or threatened use of force It doesn't say anything About a credible threat finding And it does pose, I think, jury rights It's a harder case, I agree with you It's a harder case than the felon Right, and I think it does pose like real jury You know, a right to a jury trial To have the facts that are alleged against you Proven beyond A reasonable doubt If the government says You can file your motion to dismiss And we can go before a judge And the government, on a perhaps Lower standard of proof, can prove to the judge Yes, there was A credible threat finding here So the prosecution could go forward And then as a defendant, all we get to say Argue about is whether It met the other requirements of A, B And the lower requirement, I think, of C2 So I think that's The rest of my argument As to why this should be overturned On a facial issue But also, I don't think That the government is correct When it says that C2 Orders are frequently Or will frequently show A credible threat of violence I think Judge Ho, as I mentioned already In his concurrences in Rahimi 1 and 3 Points out very real Practical problems And really very good Reasons why we should think That an order that meets C2's requirement Will not be reflective Of a credible threat of violence And just intuitively, when I was Mentioning the example earlier Of someone going in on an agreed order You know, if a judge tells you I'm going to order you essentially To follow the law, if I'm in front of a judge And he says, you know, Mr. O'Neill I'm troubled by what I'm reading here I'm prohibiting you from using, attempting To use, or threatening to use physical force Against another person, I'm never going to say Your Honor, I disagree, right? Because he's not telling me I'm finding you To be a credible threat of violence to another Person. C1, you can Understand why a person who has Notice of it and has the opportunity to Participate in the hearing would object to C1, because the person would say, no, I'm Not a credible threat of violence, and C1 Implies that the person That the judge, rather, is Lending some credence To the Allegations made against the Respondent to the order, but There really is no reason to Contest a C2 order, and There is no requirement in 922 G8 that the judge Issuing the order inform the Person that the issuance of that Order is going to work a federal Nationwide exceptionless Injunction against them possessing A firearm for the duration Of that order, and that gets me To the how aspect Of how 922 G8 C2 disarms somebody, which Is important to Mr. Paris's as-applied challenge. Now, the Statutes that the government relies on To show the historical Tradition of disarmament Were local statutes. The surety laws applied locally. They did not work a nationwide Disarmament, but they also Very explicitly allowed For exceptions. A person Could, if they were subject to a surety Law, without posting the surety Say, I need a firearm For self-defense. You can imagine Exactly the case that we have here in 1791. A person is subject To a surety law because there has been A Showing That the person is reasonably foreseeable to Violate laws or pose a danger To other people, and a magistrate Is requesting him to post a surety, and He says, you know, your honor, I can't afford a surety right now. I'm setting out on This expedition west. I'm going to go travel through dangerous areas. Maybe not wilderness. Maybe the roads Are, you know, established, but I'm going to Travel through a dangerous area. I'm hauling valuable cargo. I really need my firearm. And you can imagine, And the surety law tradition tells us that That sort of exception would be authorized. That person wouldn't be disarmed. 922 G.H.C. 2 does not permit Any sort of exception. Let's say we agreed with That line of argument. Would the supreme court Not say Back to us, well, You're committing the same mistake again. You're looking for A twin in the historical record, And all we told you to look for are analogies. I mean, I am sympathetic To the court's task of Distinguishing between twins and analogies. I think it's quite difficult. But the surety law, The problem with the surety laws Were that they were insufficient. Like the supreme court told you in Rahimi, they were insufficient on their own. But the supreme court, you know, Surprised you a little bit with this taken together Ability to combine the surety laws With the going arm laws. Surprised the author of Bruin. I agree. And so, you know, But my argument is That that would require even a further step. Not only does it require You know, the supreme court Has told us that the going arm laws And the surety laws together, taken together Mean that you can disarm someone Who's a credible threat of violence. Now, the government asks you to take a second step Without arguing for a broader interpretation Of the historical record by expanding it to C.2. And then I'm arguing If you're inclined to take that step, Please don't go even further And say not only were there You know, say that we can further Analogize beyond the surety laws To say that, you know, even though the surety laws Permitted exceptions, here there's an exception That clearly would have, you know, Qualified for the surety laws based on the history But, you know, We're not, the analogy Can do so much work. I think it breaks down At that point, is my answer to your question. And so because there are no Exceptions to 922 g.8.c.2 Because it's a nationwide injunction That was not an issue in Rahimi. Mr. Rahimi Possessed his firearm in the same place That he posed a credible threat To his domestic partner And many others, it sounds like. So this argument is not foreclosed by Rahimi It wasn't an issue there. Here, Mr. Paris' case Poses a unique set of facts Because he was Subject to an order in Kentucky While traveling in Texas And so, I think Mr. Paris' Case illustrates that, at least As applied to him, 922 g.8.c.2 Is not analogous to The going armed Or the surety laws in the Nation's history. For those reasons If there are no further questions, I would urge the court To affirm the district court's decision Dismissing the indictment against Mr. Paris, which accused him Of violating Section 922 g.8.c.2 because it is Unconstitutional as applied to him as well As facially. Thank you. Thank you, Mr. O'Neill. Ms. Kenyard for Rubeau. May it please the court Judge Duncan, I think that you got it right That the arguments that we are hearing What did I get right? Everything, obviously. And the arguments that we are Hearing here about c.2 Are appropriate in the as applied Context and that is where they are going to be Litigated. So the argument That Congress just made An assumption in writing C.2 that findings are going To exist before An injunctive order is Entered, that isn't just an assumption That is a basic tenant of American Injunction law. But as Far as the idea of there Won't be an opportunity for us When we go to trial on g.8. To go ahead and ask a jury to find Whether or not there was this underlying Finding. That same argument Could be made about c.1 In fact that same argument was made By the Rahimi panel that A c.1 Order could contain a Finding someone posed a credible threat That was simply boilerplate That was unsupportable Boilerplate. And the Supreme Court told us two things. First That does not, those kind of hypotheticals Do not support a facial Challenge. But second What we know from this court's precedent In Emerson and in Banks, is that if the problem Is that the underlying Order itself was legally Defective, relief needs to Be sought from the state order It is not done on a G.8 collateral attack. So if a defendant Believes that as applied to them No predicate finding was made before A c.2 order was entered And that was a violation of their legal rights That's a collateral attack It needs to be made in state law And that does not Differentiate c.2 from c.1 Because the hypothetical Possibility that a c.1 Order has a finding and all a jury Will be asked to find on a c.1 Case is whether a finding Was written down in the order That boilerplate possibility Exists in both contexts So that is not A means of distinguishing c.2 From c.1 Agreed protective orders Are permitted under g.8 That is the law of this circuit That is what this court held in United States versus Banks Recognizing that otherwise defendants Would have an incentive to agree To protective orders so that they Could later say that protective order Didn't count in a later Disarmament proceeding. But what this Court was very clear about in United States versus Banks is that as long As the defendant had notice Of a hearing and Had the opportunity to Participate in it If the defendant chooses to agree To a protective order That protective order is valid In binding in a later G.8 proceeding If there is again a problem With the procedure in state court That the order wasn't supported By any evidence that the defendant Had a due process problem or A sixth amendment problem with The underlying order as Banks Makes clear that argument Is for the state court It is not a constitutional problem With section 922 G.8 Um The statement Was made that under the common Law under surety law there could Always be an exception for Self-defense we can always imagine Scenarios where a justice of the peace would have Allowed somebody to go off with a weapon In the wilderness at the founding Again this is an as applied Challenge that the district courts can And should address in the first Instance but I would also Note that there is No historical law that Provided these broad self Defense Buckets for example the Only law that the defendant has Mentioned is the Massachusetts Surety statute from 1836 And what that statute Says is that if anybody Goes armed without A self-defense reason Then a surety proceeding Can't be brought against them because They have a defense to it in the first place What the statute doesn't say Is if somebody was already Under a surety if somebody Had already been disarmed They can just ignore that and claim Self-defense so whatever Right to self-defense there may have been Historically this Massachusetts statute Does not provide it And then finally I Would note the Kentucky Statute I don't think that defendant Is proposing a reasonable reading Of the statute it clearly says That in order to impose Conditions of release the state court Must make a determination And findings that A threat presently exists It does not have a specific standard Of review I don't see how it could be Something other than preponderance But in any event our history and tradition Also does not impose A particular standard of proof Unless the court has further Questions we would ask that you Reverse the facial ruling and remand For further proceedings Thank you Ms. Kenyard your case is under Submission and Mr. O'Neill We noticed that your court Appointed we appreciate your willingness To take the appointment and for As you always do your good work on behalf Of your client